UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA RAJAPAKSE,                          Case No. 17-12970

      Plaintiff                          Matthew F. Leitman
v.                                           United States District Judge

CREDIT ACCEPTANCE CORP, *et al*,             Stephanie Dawkins Davis
                                             United State Magistrate Judge

      Defendant(s).
_____/

# REPORT AND RECOMMENDATION: PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION (Dkts. 13, 14, 16, 17, 18, 25, 26, 27, 28)

## I.   PROCEDURAL HISTORY

Plaintiff filed this complaint against Credit Acceptance Corporation (CAC) and a number of individual defendants on September 8, 2017 relating to a car loan. (Dkt. 1).  Plaintiff filed an amended complaint on March 5, 2018.  (Dkt. 40).[1]  The amended complaint alleges claims under the Fair Credit Reporting Act (FCRA), the Truth in Lending Act (TILA), the Fair Credit Billing Act (which is an amendment to TILA), the Fair Debt Collection Practices Act (FDCPA), and the Magnuson-Moss Warranty Act (MMWA), along with a common-law fraud claim.

---

[1] The Court treats the amended complaint at Dkt. 40, rather than the one that appears at Dkt. 41, as the operative complaint since Fed. R. Civ. P. 15(a) allows plaintiff to amend her complaint only once as a matter of course without written consent of the opposing party(ies) or leave of court.  Dkt. 41 will be stricken in a separate order.

(Dkt. 40, Amended Complaint).  District Judge Matthew F. Leitman referred this matter to the undersigned for all pretrial proceedings.  (Dkt. 8).

Plaintiff filed a number of motions before service of the summons and complaint, including nine motions for "injunctive relief."  (Dkts. 13, 14, 16-18, 25-28).[2]  Some, though not all, of the motions include certificates of service, indicating that the particular motions in which they appear were sent to counsel for CAC via email, U.S. mail or both.  (Dkts. 13, 14, 25-28).[3]  On February 13, 2018, the Court held a telephone conference with plaintiff and defense counsel for the CAC defendants addressing, amongst other things, the briefing schedule for plaintiff's motions for injunctive relief and setting a hearing date.  With the Court's permission, plaintiff filed exhibits in support of her motions prior to the hearing.  (Dkts. 30, 31).  CAC and the individual CAC employee defendants filed a combined response to these motions on February 21, 2018.  (Dkt. 32).  Plaintiff

---

[2]  Plaintiff did not timely serve the summons and complaint within the 90 day period, as required by Federal Rule of Civil Procedure 4(m).  As a result, the Court issued an order for plaintiff to show cause why this matter should not be dismissed based on plaintiff's failure to timely serve the summons and complaint.  (Dkt. 15).  Plaintiff then contacted the Court and indicated that she was requesting service by the U.S. Marshals Service.  Subsequently, counsel for CAC and the individual CAC employee defendants agreed to accept service of the summons and complaint on their behalf.  (Dkt. 29, p. 1).  CAC and all the individual CAC employee defendants have now been served with the summons and complaint, and have filed a motion to compel arbitration and to dismiss the complaint, which will be addressed in due course.  (Dkt. 44).

[3]  All of the subject motions were filed before the complaint was served, and the defendants' receipt of any of the motions remained unclear at the time of the status conference in this matter.  Therefore, the Court provided copies of these documents along with the summons and complaint to defendants' counsel.  (Dkt. 29, p. 1).

also filed two motions for summary judgment (Dkts. 9, 12), which she subsequently indicated she would like to withdraw.  (Dkt. 16).[4]  On February 23, 2018, pursuant to notice, the Court conducted a telephonic hearing on plaintiff's various motions for injunctive relief referenced above.  (Dkt. 29).  These matters are now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** denying plaintiff's motions for injunctive relief and that plaintiff be required to withdraw two of her motions for summary judgment or withdraw one and seek leave to file the additional motion for summary judgment that she seeks to have heard.  (*See* Dkt. 16 and note 4, *supra*).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On January 7, 2014, plaintiff entered into a Retail Installment Contract (RIC) with 1 Stop Auto Sales (the Dealership) for the purchase of a 2007

---

[4]  In Dkt. 16, in addition to seeking injunctive relief, plaintiff asks the court to "set aside her motion for summary judgment" and to "set aside Plaintiff's motion for summary judgment for Defendants to be properly served."  (Dkt. 16, pp. 2, 4).  Plaintiff does not specify which motion she would like set aside or whether she seeks to have both motions set aside.  Plaintiff did not seek permission to file a second motion for summary judgment and thus, the second motion for summary judgment could simply be stricken.  *See* E.D. Mich. Local Rule 7.1(b)(2) ("A party must obtain leave of court to file more than one motion for summary judgment.").  However, plaintiff has now filed a third motion for summary judgment.  (Dkt. 55).  In view of the above-referenced requirement of Rule 7.1(b)(2), all three of the motions cannot stand.  However, it is unclear which of the three motions plaintiff wishes to be heard.  Though it is likely the third motion, in view of its recency, rather than striking any particular motion for summary judgment -- perhaps in error -- the undersigned recommends that plaintiff be required to withdraw two of the motions or withdraw one and seek leave to file any additional summary judgment motion that she seeks to have heard.

Chevrolet Trailblazer, which included a service warranty.  (Dkt. 32, Ex. 1-A).  The RIC provided that plaintiff was to make 48 monthly installment payments of $361.13 each.  *Id*.  The RIC explicitly designated CAC as "Assignee" on the contract.  *Id*.  Plaintiff says that both the Dealership and CAC told her that she could use the service warranty at any dealership or repair shop.  *Id*.  However, she alleges that she repeatedly tried to use the service warranty without success.  (Dkt. 40, p. 3).  Plaintiff says she told CAC that the warranty was not honored at multiple locations, but CAC refused to remove the warranty from the installment loan.  She also sought assistance from the Better Business Bureau, before finally, in July 2016, CAC cancelled the warranty and stated that it would adjust the loan accordingly.  (Dkt. 40, p. 4).  Plaintiff states that she continued to pay the loan until January 2017.  *Id*.  In the meantime, according to the amended complaint, CAC never sent plaintiff any other statements relating to her loan.  *Id*.  At some point however, plaintiff reviewed her credit report and noticed that it showed the original balance on her RIC was $10,889.24 with a past due amount reported by CAC of $5,624.24.  *Id*.  Plaintiff maintains that payments from February 2014 to August 2014 were not reported on her credit report, an omission that caused her credit report (presumably referring to the rating) to be low.  *Id*.  The amended complaint also details plaintiff's claim that that her vehicle was wrongfully repossessed on February 4, 2018.  (Dkt. 40, p. 4).

4

Plaintiff asserts that CAC's actions in this matter violate the TILA.  (Dkt. 40, p. 5).  She alleges that CAC provides dealers with an incentive to sell warranties on vehicles that have been previously damaged, but the warranties are not honored and later cannot be located.  *Id.*  Further, plaintiff complains that CAC continued to demand payment for the warranty, while at the same time disclaiming any responsibility for performing on the warranty.  Plaintiff contends that CAC also violated TILA and the MMWA in applying the pro-rated rebate amount of $157.36 because their calculation is wrong.  *Id.*  She avers that CAC's actions constitute common law fraud.  *Id.*[5]

Plaintiff previously filed a similar lawsuit against CAC in 2016 arising out of the same RIC, which was dismissed without prejudice based on the parties' arbitration agreement.  (*See* Case No. 16-13144, Dkts. 26, 27).  As explained in the Report and Recommendation issued by the undersigned in the 2016 case, the RIC contains an agreement to arbitrate, which the undersigned concluded encompassed all claims asserted by plaintiff in that lawsuit.  (Case No. 16-13144, Dkt. 24).   The Report and Recommendation was adopted by the District Court and plaintiff's 2016 complaint was dismissed in favor of the arbitration agreement.  (Case No. 16-

---

[5]  While plaintiff's amended complaint mentions the Fair Debt Collection Practices Act at the very beginning (Dkt. 40, p. 2), this statute is not discussed anywhere in the body of the amended complaint.  Thus, it is not clear whether plaintiff asserts a claim under this statute.

13144, Dkts. 26, 27).  Plaintiff's motion for reconsideration of the dismissal was denied.  (Dkt. 31).

The principle areas of contention in the instant case mirror those from the 2016 case.  Defendants contend that plaintiff did not make all of her monthly installment payments and as a result, her vehicle was repossessed in February 2018.  (Dkt. 32, p. 1).  Plaintiff maintains that her vehicle should not have been repossessed.  More particularly, she posits that had CAC properly credited her the full amount of the warranty ($1,380), plus accrued interest, her vehicle loan would have been paid off.  But instead, CAC only credited her account $157.67 as a partial rebate for the cost of the warranty.  (Dkt. 32, Ex. 1-A, Pg ID 230; Dkt. 32, Ex. 1-B, Pg ID 237).

On February 6, 2018, the undersigned recommended that plaintiff's *ex parte* motion for TRO be denied based on her failure to comply with Rule 65.  (Dkt. 21).  Plaintiff filed objections (Dkt. 22) and those objections were overruled by Judge Leitman, noting the following developments in this matter:

> The procedural posture of this case has changed significantly in the two weeks since Rajapakse filed the Objections. First, on February 8, 2018, Rajapakse filed new motions seeking the return of her vehicle.  (*See* ECF ## 25-27.)  Second, counsel for CAC has appeared in this action. Third, on February 13, 2018, the Magistrate Judge held a telephonic status conference with Rajapakse and counsel for CAC.  (*See* Dkt.)  During that call, CAC's counsel "indicated that [Rajapakse's] vehicle will be held and will not be sold before [her] motions for injunctive

6

relief are resolved." (*Id*.)  Finally, the Magistrate Judge
entered a briefing schedule with respect to Rajapakse's
motions.  (*See* ECF #29.)  CAC filed a response brief on
February 21, 2018 (*see* ECF #32), and a telephonic
hearing on Rajapakse's motions is scheduled for
February 23, 2018.

The Magistrate Judge has established a fair and an
appropriate process for hearing and resolving
Rajapakse's motions. Given this new framework for
resolving Rajapakse's motions, the Court concludes that
it would not be appropriate to grant Rajapakse the
extraordinary relief of a temporary restraining order
based on the previous ex parte proceedings. Instead, the
relief Rajapakse seeks should be granted, if at all, only
after consideration of the full record currently before the
Magistrate Judge.

(Dkt. 33, pp. 2-3).

## III.   SUMMARY OF MOTIONS

In her first motion for injunctive relief, the specific injunctive relief plaintiff

is seeking is not entirely clear.  She avers that CAC is retaliating against her for

bringing attention to her lawsuit via social media and for her submission of a report

by OnSite.  Plaintiff says she is "seeking equal protection of this court to keep her

from being under duress as she awaits for the court to review the complaint and

evidence submitted and being submitted against CAC."  (Dkt. 13, p. 1).  Plaintiff

requests that an "immediate injunctive order be granted against Credit Acceptance

Corporation in the dispute of the warranty."  *Id*. at 2.  In the next motion for

immediate injunctive relief against CAC, plaintiff repeats the same allegations, but

attaches a memorandum with evidence for the court's consideration.  (Dkt. 14).
Plaintiff describes the attached evidence as follows:

- "The letter submitted by Sandy Pollack letter to the Michigan Attorney General stated that the previous case filed **Case No. 16-13144** before this court was dismiss due to lack of merits.  Ms. Rajapakse case was dismissed **WITHOUT PREJUDICE** due to Ms. Rajapakse and Credit Acceptance Corporation agreed to arbitrate[] the matter. Credit Acceptance Corporation refused to arbitrate and Ms. Rajapakse refiled her complaint (Evidence/ Exhibit (A-1). The next letter [sic]"

- "The second letter from the Attorney General cites they will keep the information Ms. Rajapakse submitted for any other customer who wanted to file a claim against Credit Acceptance Corporation to show a pattern of practice. (Exhibit/ Evidence A-2)"

- "The third documentation shows that after Ms. Rajapakse submitted the report again to Attorney General and he submitted the letter, Credit Acceptance Corporation sent Ms. Rajapakse a letter of payment for the amount of the allege vehicle which is the amount of the warranty.  Ms. Rajapakse had requested on several time [sic] to cancel the warranty."

(Dkt. 14).

In her next motion for injunctive relief and to "show cause," plaintiff first discusses some service issues in her case, which appear unrelated to her request for injunctive relief. (Dkt. 16).[6] In this motion, she maintains that she does not owe any further money to CAC, and that CAC has refused to remove the warranty plus interest to reflect the true balance paid on the loan. Plaintiff also indicates that the vehicle was repossessed on February 4, 2018. (Dkt. 16). She asserts that CAC's conduct violated her rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Fair Debt Collection Practices Act. She asks for an injunction returning the vehicle to her and requiring that CAC pay all costs associated with CAC's "retaliation." Plaintiff also asks that the Court "set aside" her motion for summary judgment. *Id.*

Plaintiff's motion found at Dkt. 17 appears to be an amendment to Dkt. 16, in which plaintiff explains that she forgot to inform the Court that "in the previous complaint against Credit Acceptance Corporation their counsel, advised [her] if she agreed to arbitration they would remove CAC off her credit report. With that [plaintiff] would be able to obtain the title to the vehicle. When [CAC] refused to do so, [plaintiff] filed her secondary complaint." (Dkt. 17, p. 2). In Dkt. 18,

---

[6] Plaintiff seems to suggest that the Court's Order to Show Cause issued to her regarding her failure to serve the summons and complaint caused her harm by providing a "gap" in time, which allowed CAC to repossess the vehicle before the summonses were issued in this matter. The Court is unaware of any authority, and plaintiff provides none, suggesting that the issuance of a summons would have precluded CAC from taking action to repossess plaintiff's vehicle.

plaintiff again seems to be amending Dkt. 16.  She states that she is a dependent under the Active Duty Military Service Act because her son-in-law is active duty Army, and made her a dependent.  As a result, plaintiff says she is protected by this Act and CAC was required to obtain a court order to take possession of her vehicle.  (Dkt. 18).

Plaintiff also filed motions for injunctive relief seeking a stay to stop the sale of her vehicle.  (Dkt. 25, 26).  Plaintiff then filed additional motions for the return of her vehicle.  (Dkt. 27, 28).  She says that she does not owe anything further on the loan and that it was wrongfully repossessed.  (Dkt. 27).  She also says that CAC should be required to pay for all towing expenses associated with returning the vehicle to her.  (Dkt. 28).

## IV.    ANALYSIS AND CONCLUSION

### A.    Legal Standards for Preliminary Injunction

In determining whether injunctive relief is proper, the court considers four factors:  (1) whether plaintiff has a strong likelihood of success on the merits; (2) whether plaintiff has shown irreparable injury; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.  *See Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005).  Although no single factor is controlling, the likelihood of success on the merits is often the predominant

consideration. *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal."). Plaintiff bears the burden of demonstrating her entitlement to a preliminary injunction, and her burden is a heavy one because injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Indeed, the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000); *see also McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) ("The proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion because a preliminary injunction is an extraordinary remedy."). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Michigan Bell Telephone Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001)). A plaintiff must always, however, show irreparable harm before a preliminary injunction may issue. *Friendship Materials, Inc. v. Michigan Brick, Inc*., 679 F.2d 100, 104 (6th Cir. 1982).

Courts should consider the merits of a requested preliminary injunction even where the validity of the underlying claims will be determined in arbitration. *JPMorgan Chase Bank, N.A. v. Wirtanen*, 2015 WL 3506105 (E.D. Mich. 2015) (citing *Am. Exp. Fin. Advisors, Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 910 F.2d 1049, 1052–54 (2d Cir. 1990) (The expectation of speedy arbitration does not absolve the district court of its responsibility to decide requests for preliminary injunctions on their merits.); *Wells v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 919 F.Supp. 1047, 1051 (E.D. Ky. 1994)); *see also Nexteer Automotive Corp. v. Korea Delphi Automotive Sys. Corp.*, 2014 WL 562264 (E.D. Mich. 2014) (Recognizing that district court may grant preliminary injunctive relief even where the underlying dispute is subject to mandatory arbitration.) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373 (6th Cir. 1995)).

B.     Analysis

In the view of the undersigned, plaintiff has not met her burden of proof to support the extraordinary remedy of injunctive relief.  Plaintiff's various motions primarily restate the allegations contained in her amended complaint.  The exhibits she has offered do not detract from her claims, but they also do not appear to increase her likelihood of success on the merits.  Indeed, defendants argue that plaintiff has failed to offer any evidence showing that she is strongly likely to

succeed on the merits of her claims.  Defendants point out that such a failure, by itself, warrants the denial of injunctive relief.  (Dkt. 32, pp. 4-5) (citing *Essroc Cement Corp. v. CPRIN*, *Inc*., 593 F. Supp. 2d 962, 969 (W.D. Mich. 2008) (citing *Abney v. Amgen, Inc*., 443 F.3d 540, 547 (6th Cir. 2006) ("a finding of no likelihood of success 'is usually fatal'") (quoting G*onzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)).  Defendants offer evidence supporting their claims that (1) plaintiff failed to make several monthly installment payments in accordance with the RIC; (2) a rebate for the cancellation of the vehicle service contact was applied to her account on July 7, 2016; and (3) there is a past due balance of $5,649.63 on her account.  (Dkt. 32, Ex. 1).

The undersigned agrees with defendants that plaintiff offers scant analysis to support a conclusion that she is likely to be successful in her claims under the FCRA, FCBA, FDCPA, the MMWA or her common law fraud claim.  To begin with, even applying the less stringent standard afforded *pro se* litigants in reviewing the allegations of their complaints, the contours of plaintiff's claims are difficult to discern.  *See Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991) ("[W]hile *pro se* litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer."); *Sizemore v. Soc. Sec. Admin.*, 2006 WL

406612 (S.D. Ohio 2006) (Even under this liberal standard, a *pro se* plaintiff must still show that he is entitled to a preliminary injunction.).  Plaintiff's amended complaint allegations do not specify which statutory provisions were violated, and none of plaintiff's many motions contain any analysis of her claims or show the Court how the evidence provided supports those claims.  Furthermore, as discussed in more detail below, based on several significant legal defects, plaintiff's claims are not likely to succeed on the merits.

With respect to the warranty, plaintiff says that the RIC included a warranty on the subject vehicle, but that the warranty was either breached or fraudulent since it was not honored when she attempted to use it.  As a result, she requested that it be removed.  She also claims that CAC provided incentives for dealers to offer a warranty on previously-damaged cars, with no intention of honoring them. The Court need not, and indeed, cannot, address the merits of plaintiff's MMWA claim because she has not sufficiently pleaded that she meets the requirements for subject matter jurisdiction for this claim.  As explained by the Sixth Circuit in *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881-882 (6th Cir. 2005), subject matter jurisdiction over an MMWA claim requires a minimum of $50,000 to be in controversy:

> However, the jurisdiction of [MMWA claims] is subject to an amount in controversy requirement. The applicable portion of the Act provides, "No claim shall be cognizable in a suit brought under paragraph (1)(B) of

14

> this subsection ... (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit."

*Id*. at 882 (quoting 15 U.S.C. § 2310(d)(3)(B); *see also Sanford v. Ektelon/Prince Sports Group, Inc*., 1999 WL 33537914 (D. Neb. 1999) ("The statutory scheme requires that each individual claim must be $25.00 or more and that the entire amount in controversy must be at least $50,000.00."). Notably, the *Golden* court determined that interest paid over the life of the loan is <u>not</u> included in calculating the amount in controversy. *Golden*, 410 F.3d at 885. Here, even taking into account plaintiff's entire loan amount of approximately $17,000 (*including* interest), nothing in her amended complaint, the filings at issue in this report, or other evidence offered by plaintiff, suggests that her claims, even considered in the aggregate, meet the jurisdictional threshold of $50,000. Thus, the Court does not have subject matter jurisdiction over plaintiff's MMWA claim and she is unlikely to succeed on the merits.

In addition, plaintiff's TILA claim appears to be barred by the statute of limitations. A TILA claim must be filed within "one year from the date of occurrence of the violation." *Lester v. Wow Car Co*., 2014 WL 2567087, at *7 (S.D. Ohio June 6, 2014) (quoting 15 U.S.C. § 1640(e)), aff'd, 601 Fed. Appx. 399 (6th Cir. 2015). While not entirely clear from the amended complaint or plaintiff's many motions, it appears that any alleged TILA violations occurred either at the

time of the loan origination on January 7, 2014 or when the warranty rebate was
issued on July 7, 2016.  Plaintiff filed this lawsuit on September 8, 2017, more
than one year after each of these events.  Thus, any TILA claim appears to be
barred by the statute of limitations and is unlikely to succeed on the merits.[7]

As to plaintiff's claim under the FCBA, this statute does not apply to the
vehicle loan at issue in this case.  As explained in *Crenshaw v. Experian Info.
Sols., Inc*., 2015 WL 3771691, at *3 (N.D. Ohio June 17, 2015), the FCBA applies
"only to open-end credit transactions, and, chiefly, to credit card accounts."  *Id*.
(quoting *Jacobs v. Wells Fargo & Co*., 2011 WL 5120408, at *2-3 (S.D. Ohio Oct.
27, 2011)).  It does not apply to closed-end credit transactions.  *Id*. (citing *Stroman
v. Bank of America Corp*. 852 F.Supp.2d 1366, 1374 (N.D. Ga. 2012) ("The
FCBA's protections do not extend to closed-end credit, such as the mortgage loan
at issue in this case."); *Roybal v. Equifax*, 405 F.Supp.2d 1177, 1180 (E.D. Cal.
2005) ("By its very terms, the FCBA's billing error section applies solely to
creditors of open end credit plans.")); *see also Burnstein v. Saks Fifth Avenue &
Co.*, 208 F.Supp.2d 765, 772 (E.D. Mich. 2002), aff'd 85 Fed. Appx. 430 (6th Cir.
2003) (The FCBA and its implementing regulations (Regulation Z), 12 C.F.R.
§§ 226.1 *et seq*., "set forth the procedures to be followed when a creditor receives

---

[7]  Notably, plaintiff did not bring a TILA claim in her prior lawsuit, Case No. 16-13144.
Thus, there is no possibility that the limitations period for this claim was tolled during the
pendency of that lawsuit.

16

notice from a consumer of an alleged billing error in the consumer's credit card account."). Based on the foregoing authority, the FCBA does not apply to the loan transaction at issue in this case. Thus, plaintiff's FCBA claim is unlikely to succeed on the merits.

Plaintiff's FDCPA is also likely to fail. The FDCPA applies only to debt collectors, not creditors attempting to collect their own debt. *Colson v. Wilmington Sav. Fund Soc'y*, 2018 WL 345174, at *6 (E.D. Mich. Jan. 10, 2018) (citing 15 U.S.C. § 1692a(6)); *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 734 (6th Cir. 2007). In this case, CAC was an assignee under the RIC dated January 7, 2014. (Dkt. 32, Ex. 1-A). As explained in *Colson*, when a creditor assigns a debt to another, the assignee may or may not satisfy the definition of a debt collector under the FDCPA:

> For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106–8 (6th Cir. 1996); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

*Colson*, at * 6 (quoting *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) (citing 15 U.S.C. § 1692a(6)(F)(iii))). Thus, "an entity attempting

to collect on a debt is only a debt collector if the borrower was in default at the time the debt was acquired." *Id*. Here, even assuming that CAC is not the originator of the debt in question, the loan was not in default at the time CAC acquired it. Thus, CAC is not a debt collector as defined by the FDCPA and plaintiff is unlikely to succeed on such a claim against CAC.

Finally, plaintiff's fraud claim is also unlikely to succeed on the merits because she has failed to plead it with any particularity as required by Federal Rule of Civil Procedure 9(b). This case is similar to the circumstances presented in *Freund v. Deutsche Bank Nat'l Tr. Co*., 2014 WL 12658843, at *3 (E.D. Mich. Oct. 22, 2014), where the plaintiff mentioned the word "fraud" only once in his complaint. The court concluded that, even construing the complaint liberally to assert a claim of fraud, the plaintiff failed to meet the heightened pleading requirements of Rule 9(b), which require plaintiffs to plead the "who, what, when, where, why and how of the alleged fraud." *Id*. Here, plaintiff's only allegation regarding her fraud claim in her amended complaint is as follows:

> Credit Acceptance Corporation breach of warranty presented a common law of fraud due to the existent or preexisting fact the warranty purchased CAC nor dealers or affiliates had no intentions of honoring such service, knowing made the impression or false claim of the warranty, the representation of the warranty was intended for Plaintiff to rely on the warranty, Plaintiff has reasonably to rely on it, and a result she was injured by its breach.

(Dkt. 40, p. 6).  Plaintiff provides, at most, a portion of the "what," but no specific details regarding the "who," "when," "where" and "why" to support her fraud claim and has not met the pleading requirements of Rule 9(b).  Thus, her fraud claim is unlikely to succeed on the merits.

Further, while she says that she was entitled to a credit for the full amount of the warranty plus interest and that CAC failed to give that to her, she does not explain how, even if that is true, her claims under the FCRA, FCBA, FCDPA, and the MMWA are likely to succeed.  She has not even provided the Court with any calculation suggesting that, had she received that full credit, including the claimed interest deduction, the resulting amount would have been sufficient to have paid off the vehicle at the time when she stopped making payments.  And again, even if true, she has not connected this claimed credit with the merits of any claims under the statutes mentioned in her amended complaint or her common law fraud claim. Plaintiff's exhibits do not save her cause.  Plaintiff provides copies of the following documents in support of her motions:

- A letter from CAC's counsel dated 12/20/17 sent to the Michigan Department of Attorney General in response to plaintiff's complaint filed with this agency.  (Dkt. 14-2).

- A second copy of the 12/20/17 letter from CAC's counsel along with a 1/2/18 letter from the Michigan Department of Attorney General

indicating that it could take no action on plaintiff's complaint.  (Dkt. 14-3).

- Another copy of the 12/20/17 letter and the 1/2/18 letter.  (Dkt. 14-4).

- An 8/21/17 letter from plaintiff to the CAC board members regarding her claims and indicating that she would refile her lawsuit if the matter was not resolved to her satisfaction.  (Dkt. 30-1)

- Emails between plaintiff and CAC's counsel regarding arbitration. (Dkt. 30-2).

- A partial screenshot purported to show that plaintiff's account with CAC was removed from her credit report.  (Dkt. 30-3).

- An excerpt from plaintiff's credit report purportedly showing that payments made by plaintiff to CAC are "missing."  (Dkt. 30-4).

- A Notice of Default from CAC to plaintiff.  (Dkt. 30-5).

- A Notice of Default from CAC to plaintiff.  (Dkt. 30-6).

- A receipt for payment by plaintiff to CAC dated 6/10/16 in the amount of $160.  (Dkt. 30-7).

- A written record of payments made by plaintiff to CAC on various dates.  (Dkt. 31-1).

Plaintiff does not explain, nor is the undersigned able to discern, how these exhibits support the merits of her claims such that injunctive relief is appropriate.

Notably, the payments set forth in Dkt. 30-7 and Dkt. 31-1 are all accounted for on the Transaction Report for plaintiff's loan provided by CAC.  (Dkt. 32, Ex. 1-B). Thus, it does not appear that CAC failed to account for any payments made by plaintiff.  Based on the foregoing analysis of plaintiff's claims, the assessment of the merits weighs against the issuance of a preliminary injunction.

The undersigned also agrees with defendants that plaintiff has not shown that she will be irreparably harmed absent issuance of a preliminary injunction. With respect to the harm factor, the harm that would result in the absence of the injunction must be irreparable, not merely substantial.  As the Supreme Court has noted, "[t]he key word in this consideration is irreparable.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 924 (D.C. 1958)).  In short, "[a] plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages."  *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).  Here, plaintiff's alleged injuries (the repossession and/or sale of her automobile and/or the recalculation of her loan balance) can be

remedied by money damages.[8]  *See e.g.*, *Hammond v. City of Troy*, 2015 WL 4276098, at *4 (E.D. Mich. July 6, 2015), report and recommendation adopted, 2015 WL 4276115 (E.D. Mich. July 14, 2015) ("In this case, if the Plaintiff does not contend that his 2005 Grand Prix is particularly unique or irreplaceable.  If he loses the car, he can be fully compensated by money damages if he is ultimately successful in his lawsuit."); *Int'l Ass'n of Machinists & Aerospace Workers v. Alaska Airlines, Inc.,* 1986 WL 15573, at *6 (W.D. Wash. Aug. 25, 1986) ("While clearly the loss of valued possessions is at best unpleasant, it is not irreparable.  Monetary value can be placed on homes, cars, and boats.  Therefore, if union members were wrongly dispossessed of those items by Alaska's actions, an award of damages can make them whole again.").  The assessment of this factor also weighs against plaintiff's position that a preliminary injunction is necessary and appropriate.

Just as in *Essroc*, given plaintiff's "weak to non-existent showing" on the factors of likelihood of success on the merits and irreparable harm  -- "either of which alone justifies denial of the preliminary injunction" -- the court is not

---

[8]  The specific injunctive relief requested by plaintiff is not always entirely clear.  For example, in two of her motions, she asks that an "immediate injunctive order be granted against Credit Acceptance Corporation in the dispute of the warranty."  (Dkts. 13, 14).  But, in other motions, she asks for an order that CAC return the property to her and that costs be assessed against CAC for the return of the property.  (Dkts. 16, 17, 18, 27, 28).  Later, she asks the court to stay the sale of the vehicle (Dkt. 25, 26) and for CAC to be prohibited from seizing property from plaintiff.  (Dkt. 28).

required to consider the third and fourth factors (harm to others if the preliminary injunction issues, and the public interest).  *See Essroc*, 593 F.Supp.2d at 970-71 (citing *Edwards v. Burnett*, 2006 WL 1983236, *2 (E.D. Mich. July 12, 2006) ("Given the impossibility of Plaintiff's success on the merits, and the lack of showing of irreparable harm, it is not necessary to discuss the other two factors— substantial harm to others and the public interest.").  Based on the foregoing, plaintiff's motions for preliminary injunction should be **DENIED**.

## V.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** denying plaintiff's motions for injunctive relief and that plaintiff be required to withdraw two of her motions for summary judgment or withdraw one and seek leave to file the additional motion for summary judgment that she seeks to have heard.  (*See* Dkt. 16 and note 4, *supra*).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 19, 2018                                  s/Stephanie Dawkins Davis
                                                      Stephanie Dawkins Davis
                                                      United States Magistrate Judge

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on <u>April 19, 2018</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel and/or parties of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov