UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA RAJAPAKSE,                          Case No. 17-12970

     Plaintiff                             Matthew F. Leitman
v.                                           United States District Judge

CREDIT ACCEPTANCE CORP, *et al*,             Stephanie Dawkins Davis
                                             United States Magistrate Judge

     Defendant(s).
_____/

**REPORT AND RECOMMENDATION**
**DEFENDANTS' MOTION TO DISMISS (Dkt. 123) and PLAINTIFF'S**
**MOTIONS FOR SUMMARY JUDGMENT, TO EXPEDITE, TO COMPEL,**
**and TO AMEND SUMMARY JUDGMENT (Dkt. 119, 127, 129, 134)**

## I. PROCEDURAL HISTORY

Plaintiff, Samantha Rajapakse, filed this complaint against Credit

Acceptance Corporation (CAC) and a number of individual defendants on

September 8, 2017 relating to a car loan.  (Dkt. 1).  Rajapakse filed an amended

complaint on March 5, 2018.  (Dkt. 40).  The amended complaint alleges claims

under the Fair Credit Reporting Act (FCRA), the Truth in Lending Act (TILA), the

Fair Credit Billing Act (which is an amendment to TILA), the Fair Debt Collection

Practices Act (FDCPA), and the Magnuson-Moss Warranty Act (MMWA), along

with a common-law fraud claim.  (Dkt. 40, Amended Complaint).  District Judge

Matthew F. Leitman referred this matter to the undersigned for all pretrial

proceedings.  (Dkt. 8).  On October 25, 2018, defendants filed a motion to dismiss the amended complaint, which is fully briefed.  (Dkt. 123-125).  Additionally, Rajapakse previously filed a motion for summary judgment (Dkt. 119), and subsequently filed a motion to expedite the return of her vehicle (Dkt. 127), a motion to compel the return of her vehicle (Dkt. 129), and a motion to amend her motion for summary judgment.  (Dkt. 134).[1]  Because they were recently filed, no responses to these motions have yet been filed.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED**, and that Rajapakse's pending motions be **TERMINATED** as moot.

## II.    FACTUAL BACKGROUND

On January 7, 2014, Rajapakse entered into a Retail Installment Contract (RIC) with 1 Stop Auto Sales (the Dealership) for the purchase of a 2007 Chevrolet Trailblazer, which included a service warranty.  (Dkt. 32, Ex. 1-A, Pg ID 229-233).  The RIC provided that Rajapakse was to make 48 monthly installment payments of $361.13 each.  *Id.*  The RIC explicitly designated CAC as "Assignee" on the contract.  *Id.*  Rajapakse says that both the Dealership and CAC told her that she could use the service warranty at any dealership or repair shop.  *Id.*  However,

---

[1] Notably, Rajapakse's previous motions for injunctive relief, some of which sought the return of her vehicle, were all rejected by the Court.  (Dkt. 57, 65).

she alleges that she repeatedly tried to use the service warranty without success. (Dkt. 40, p. 3). Rajapakse says she told CAC that the warranty was not honored at multiple locations, but CAC refused to remove the warranty from the installment loan. She also sought assistance from the Better Business Bureau, before finally, in July 2016, CAC cancelled the warranty and stated that it would adjust the loan accordingly. (Dkt. 40, p. 4). Rajapakse states that she continued to pay the loan until January 2017. *Id*. In the meantime, according to the amended complaint, CAC never sent Rajapakse any other statements relating to her loan. *Id*. At some point however, Rajapakse reviewed her credit report and noticed that it showed the original balance on her RIC was $10,889.24 with a past due amount reported by CAC of $5,624.24. *Id*. Rajapakse maintains that payments from February 2014 to August 2014 were not reported on her credit report, an omission that caused her credit report (presumably referring to the rating) to be low. *Id*. The amended complaint also details Rajapakse's claim that her vehicle was wrongfully repossessed on February 4, 2018. (Dkt. 40, p. 4).

Rajapakse asserts that CAC's actions in this matter violate the TILA. (Dkt. 40, p. 5). She alleges that CAC provides dealers with an incentive to sell warranties on vehicles that have been previously damaged, but the warranties are not honored and later cannot be located. *Id*. Further, Rajapakse complains that CAC continued to demand payment for the warranty, while at the same time

3

disclaiming any responsibility for performing on the warranty.  Rajapakse contends

that CAC also violated TILA and the MMWA in applying the pro-rated rebate

amount of $157.36 because their calculation is wrong.  *Id.*  She contends that

CAC's actions constitute common law fraud.  *Id.*[2]

Rajapakse previously filed a similar lawsuit against CAC in 2016 arising out

of the same RIC, which was dismissed without prejudice based on the parties'

arbitration agreement.  (*See* Case No. 16-13144, Dkts. 26, 27).  As explained in the

Report and Recommendation issued by the undersigned in the 2016 case, the RIC

contains an agreement to arbitrate, which the undersigned concluded encompassed

all claims asserted by Rajapakse in that lawsuit.  (Case No. 16-13144, Dkt. 24).

The Report and Recommendation was adopted by the District Court and

Rajapakse's 2016 complaint was dismissed in favor of the arbitration agreement.

(Case No. 16-13144, Dkts. 26, 27).  Rajapakse's motion for reconsideration of the

dismissal was denied.  (Dkt. 31).

## III.   ANALYSIS AND CONCLUSION

A.   <u>Standard of Review</u>

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim

---

[2] While Rajapakse's amended complaint mentions the Fair Debt Collection Practices Act at the very beginning (Dkt. 40, p. 2), this statute is not discussed anywhere in the body of the amended complaint.  Thus, it is not clear whether Rajapakse asserts a claim under this statute.

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his [or her] entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted)).

The Supreme Court raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that had prevailed for the last few decades.  *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Twombly*, 550 U.S. at 555.  In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 677.  The Sixth Circuit observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible."  *Courie*, at *2.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  And

although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Iqbal*, 556 U.S. at 678.

In ruling on the City's motion, the Court may consider the pleadings of the parties, including copies of any written instrument(s) attached to a pleading as their attachment thereto renders them a part of the pleading under Rule 10(c). *See also Commercial Money Center, Inc. V. Illinois Union Ins. Co.*, 508 F.3d 326, 335-336 (6th Cir. 2007) (Motion for judgment on the pleadings was not converted to motion for summary judgment by court's consideration of documents that were not attached to counterclaim but were attached to the complaint and the answer to counterclaim). The undersigned also recognizes that generally if a court considers matters outside of the pleadings, the court must convert the motion into one for summary judgment under Rule 56. However, "[w]hen a court is presented with a 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (noting that the Sixth Circuit has "held that 'documents that a

defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to h[is] claim'") (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Here, defendants purport to attach the parties' contract as an exhibit to the motion to dismiss but did not actually do so. However, the undersigned may properly consider the parties' contract, because it is mentioned in the amended complaint and is part of the record. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (The court may consider "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint,'" without converting the motion to dismiss into one for summary judgment.).

B.   Analysis

To begin with, in view of Rajapakse's status as a *pro se* litigant, the Court permits some leeway in evaluating her filings. However, even applying the less stringent standard afforded *pro se* litigants in reviewing the allegations of their complaints, the contours of Rajapakse's claims are difficult to discern. *See Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991) ("[W]hile *pro se* litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can

comprehend as easily as a lawyer.").  Notably, Rajapakse does not address the substance of defendants' arguments regarding the merits of any of her claims. Rather she focuses on restating the allegations in her complaint.  (Dkt. 124).  And, as discussed in more detail below, Rajapakse's amended complaint does not specify which statutory provisions were violated and simply fails to state any claim on which relief may be granted.

Additionally, Rajapakse argues that defendants did not timely file their motion to dismiss and that they should be judicially estopped from proceeding with their motion to dismiss because they never filed an answer to the complaint. Rajapakse misapprehends defendants' obligation to file an answer and the timeliness of their motion to dismiss.  Rajapakse filed her amended complaint on March 5, 2018.  (Dkt. 40).  On March 16, 2018, defendants timely filed their motion to dismiss in lieu of an answer to the complaint (Dkt. 44), which is expressly permitted under the Federal Rule of Civil Procedure.  Fed.R.Civ.P. 12(b)(6) (The defense of failure to state a claim on which relief may be granted may be raised by motion before pleading if a responsive pleading is allowed).  On July 19, 2018, defendants withdrew their motion to dismiss and separately moved for an extension of time to answer or otherwise respond to the amended complaint, in light of the stay of proceedings entered by the Court.  (Dkt. 104, 105).  On September 10, 2018, the Court lifted the stay and granted defendants' motion,

permitting defendants 45 days from the date the stay was lifted to answer or

otherwise respond to the amended complaint.  (Dkt. 118, p. 4).  Defendants timely

filed their motion to dismiss the amended complaint on October 25, 2018, exactly

45 days after the stay was lifted.  (Dkt. 123).  Thus, Rajapakse's complaints about

the untimeliness of defendants' motion to dismiss are without merit.

1.     Magnuson-Moss Warranty Act

With respect to the warranty, Rajapakse says that the RIC included a

warranty on the subject vehicle, but that the warranty was either breached or

fraudulent since it was not honored when she attempted to use it.  As a result, she

requested that it be removed.  She also claims that CAC provided incentives for

dealers to offer a warranty on previously-damaged cars, with no intention of

honoring them.  The Court need not, and indeed, cannot, address the merits of

Rajapakse's MMWA claim because she has not sufficiently pleaded that she meets

the requirements for subject matter jurisdiction for this claim.  As explained by the

Sixth Circuit in *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881-882 (6th Cir.

2005), subject matter jurisdiction over an MMWA claim requires a minimum of

$50,000 to be in controversy:

> However, the jurisdiction of [MMWA claims] is subject
> to an amount in controversy requirement. The applicable
> portion of the Act provides, "No claim shall be
> cognizable in a suit brought under paragraph (1)(B) of
> this subsection ... (B) if the amount in controversy is less
> than the sum or value of $50,000 (exclusive of interests

and costs) computed on the basis of all claims to be
determined in this suit."

*Id*. at 882 (quoting 15 U.S.C. § 2310(d)(3)(B); *see also Sanford v. Ektelon/Prince
Sports Group, Inc*., 1999 WL 33537914 (D. Neb. 1999) ("The statutory scheme
requires that each individual claim must be $25.00 or more and that the entire
amount in controversy must be at least $50,000.00.").  Notably, the *Golden* court
determined that interest paid over the life of the loan is <u>not</u> included in calculating
the amount in controversy.  *Golden*, 410 F.3d at 885.  Here, even considering
Rajapakse's entire loan amount of approximately $17,000 (*including* interest),
nothing in her amended complaint suggests that her claims, even considered in the
aggregate, meet the jurisdictional threshold of $50,000.  Thus, the Court does not
have subject matter jurisdiction over Rajapakse's MMWA claim, and this claim
must be dismissed.

2.      Truth in Lending Act

In addition, Rajapakse's TILA claim is barred by the statute of limitations.
A TILA claim must be filed within "one year from the date of occurrence of the
violation."  *Lester v. Wow Car Co*., 2014 WL 2567087, at *7 (S.D. Ohio June 6,
2014) (quoting 15 U.S.C. § 1640(e)), aff'd, 601 Fed. Appx. 399 (6th Cir. 2015).
While not entirely clear from the amended complaint, it appears that any alleged
TILA violations would have to have occurred either at the time of the loan
origination on January 7, 2014 or when the warranty rebate was issued on July 7,

2016.  Rajapakse filed this lawsuit on September 8, 2017, more than one year after

each of these events.  Thus, any TILA claim is barred by the statute of limitations

and must be dismissed.[3]

### 3.    Fair Credit Billing Act

As to Rajapakse's claim under the FCBA, this statute does not apply to the

vehicle loan at issue in this case.  As explained in *Crenshaw v. Experian Info.*

*Sols., Inc*., 2015 WL 3771691, at *3 (N.D. Ohio June 17, 2015), the FCBA applies

"only to open-end credit transactions, and, chiefly, to credit card accounts."  *Id*.

(quoting *Jacobs v. Wells Fargo & Co*., 2011 WL 5120408, at *2-3 (S.D. Ohio Oct.

27, 2011)).  It does not apply to closed-end credit transactions.  *Id*. (citing *Stroman*

*v. Bank of America Corp*. 852 F.Supp.2d 1366, 1374 (N.D. Ga. 2012) ("The

FCBA's protections do not extend to closed-end credit, such as the mortgage loan

at issue in this case."); *Roybal v. Equifax*, 405 F.Supp.2d 1177, 1180 (E.D. Cal.

2005) ("By its very terms, the FCBA's billing error section applies solely to

creditors of open end credit plans.")); *see also Burnstein v. Saks Fifth Avenue &*

*Co.*, 208 F.Supp.2d 765, 772 (E.D. Mich. 2002), aff'd 85 Fed. Appx. 430 (6th Cir.

2003) (The FCBA and its implementing regulations (Regulation Z), 12 C.F.R.

§§ 226.1 *et seq*., "set forth the procedures to be followed when a creditor receives

---

[3]  Notably, Rajapakse did not bring a TILA claim in her prior lawsuit, Case No. 16-13144.  Thus, there is no possibility that the limitations period for this claim was tolled during the pendency of that lawsuit.

notice from a consumer of an alleged billing error in the consumer's credit card account.").  Based on the foregoing authority, the FCBA does not apply to the loan transaction at issue in this case.  Thus, Rajapakse's FCBA claim must be dismissed.

4. Fair Debt Collection Practices Act

Rajapakse's FDCPA must also fail as it applies only to debt collectors, not creditors attempting to collect their own debt.  *Colson v. Wilmington Sav. Fund Soc'y*, 2018 WL 345174, at *6 (E.D. Mich. Jan. 10, 2018) (citing 15 U.S.C. § 1692a(6)); *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 734 (6th Cir. 2007).  In this case, CAC was an assignee under the RIC dated January 7, 2014. (Dkt. 32, Ex. 1-A, Pg ID 229-233).  As explained in *Colson*, when a creditor assigns a debt to another, the assignee may or may not satisfy the definition of a debt collector under the FDCPA:

> For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106–8 (6th Cir. 1996); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

*Colson*, at \* 6 (quoting *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) (citing 15 U.S.C. § 1692a(6)(F)(iii))).  Thus, "an entity attempting to collect on a debt is only a debt collector if the borrower was in default at the time the debt was acquired."  *Id*.  Here, even assuming that CAC is not the originator of the debt in question, Rajapakse has not alleged, nor does it appear that the loan was in default at the time CAC acquired it, given that CAC acquired it on the very same day that Rajapakse purchased the vehicle and the loan was originated.  (Dkt. 32, Ex. 1-A, Pg ID 232) ("FOR VALUE RECIEVED, Seller hereby assigns and transfers all Seller's right, title and interest in and to this Contract, and in and to the Vehicle described herein, to CREDIT ACCEPTANCE CORPORATION ('Assignee'), its successors and assigns, pursuant to and accordance with the terms and conditions set forth in the existing dealer agreement between Seller and Assignee in effect on the date hereof.").  Thus, CAC is not a debt collector as defined by the FDCPA and Rajapakse cannot state such a claim against CAC.

     5.    Fair Credit Reporting Act

As defendants point out in their brief, Rajapakse purports to allege in the amended complaint that CAC violated the FCRA in the following ways.  First, Rajapakse alleges:

> [1] It has been established by court records in submission
> that Credit Acceptance Corporation has kept a poor

performance on the account related to providing accurate information to the credit bureaus and to this court in an attempt to make one accurate than another Credit Acceptance Corporation (hereinafter Furnisher) violated Rajapakse by intentionally reporting missing payments not applied on her credit report from February 2014 to August 2017 and from September 2016 to January 2017 causing her credit score to drop.

(Dkt. 40, Pg ID 298-299).  Second, Rajapakse alleges the following:

[2] Credit Acceptance Corporation continue to report the balance of the original loan as $10,889.34 to the credit bureaus and provide the original contact of $17,334, 34 to the court as the original amount. After Rajapakse disputed her report twice in August 2017 and February 2017 in which all three credit bureaus removed Credit Acceptance Corporation off her credit as outline in the Fair Credit Reporting Act. Credit Acceptance Corporation violated this act by presenting a payment history with supporting affidavit stating the higher amount was more accurate than the amount reported to the credit bureaus after Rajapakse filed two disputes with all three credit bureaus.

(Dkt. 40, Pg ID 299).  Third, Rajapakse alleges the following:

[3] Credit Acceptance Corporation violated 15 U.S.C. § 1681s by knowingly providing to the three credit bureaus the information provides to the three credit bureaus information believe to be inaccurate after being notified of the inaccuracy. CAC is the sole person who furnished information to the credit bureaus on Rajapakse's credit and use the inaccuracy to take possession of her vehicle and in attempting to validate the error to the court to show justification.

(Dkt. 40, Pg ID 299).

14

In the view of the undersigned, Rajapakse's amended complaint simply does not plead the factual content necessary for the Court to draw a reasonable inference that defendants are liable for any violation of the law.  Therefore, she fails to state a claim under the FCRA.  As explained in *LaBreck v. Mid-Mich. Credit Bureau*, 2016 WL 6927454, at *2 (W.D. Mich. Nov. 28, 2016), the FCRA regulates the field of consumer reporting and governs the collection and use of consumer credit information.  The purpose of the Act is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer." 15 U.S.C. § 1681(b).  The Act covers three main actors: (1) credit reporting agencies; (2) users of consumer reports; and (3) furnishers of information to credit reporting agencies.  *LaBreck*, at *2 (citing *Ruggiero v. Kavlich*, 411 F.Supp.2d 734, 736 (N.D. Ohio 2005)).  Like the plaintiff in *LaBreck*, it appears from the instant complaint that plaintiff considers defendants to be "furnishers of information" within the meaning of 15 U.S.C. § 1681s-2(a).  *LaBreck* notes that while § 1681s-2 does not define "furnisher," courts have defined the term as "any entity which transmits information concerning a particular debt owed by a particular customer to consumer reporting agencies." *Carney v. Experion Information Solutions, Inc*., 57 F.Supp.2d 496, 501 (W.D. Tenn. 1999).  The FCRA imposes two general duties on furnishers of information

to a credit reporting agency: (1) a duty to provide accurate information, § 1681s-2(a); and (2) a duty to undertake an investigation upon receipt of notice of dispute from a consumer reporting agency, § 1681s-2(b). *LaBreck*, at *2.

In Paragraph 1 quoted above from Rajapakse's amended complaint, she alleges that CAC provided inaccurate information to the court and to credit reporting agencies. As an initial observation, the law does not suggest that providing inaccurate information to the court is a violation of the FCRA – though doing so is certainly not advisable. Further, there is no private cause of action for consumers against furnishers of information for failure to comply with § 1681s-2(a), which addresses providing inaccurate information to the credit reporting agencies in the first instance. *Id.* (citing *Sanders v. Mountain America Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011); *Nelson v. Chase Manhatten Mortg. Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002); *Elsady v. Rapid Global Business Solutions, Inc.*, 2010 WL 2740154, at *5 (E.D. Mich. Jul. 12, 2010); *Ruggiero*, 411 F. Supp. 2d at 736; *Carney*, 57 F.Supp.2d at 502). Rather, the statute limits enforcement of the duty to provide accurate information to specific federal agencies and officials. *LaBreck*, at *2 (citing 15 U.S.C. § 1681s-2(d)). Thus, Rajapakse cannot sue defendants for allegedly furnishing inaccurate information under § 1681s-2(a).

In Paragraph 2 of Rajapakse's amended complaint quoted above, she seems to posit, in part, the theory that defendants violated the FCRA by providing inaccurate affidavits and other information to this court. That is, Rajapakse claims that what defendants told the Court about her debt was inconsistent with what they were reporting to the credit reporting agencies. Importantly, Rajapakse asserts that the information provided to the court was inaccurate, not what was provided to the credit reporting agencies. Accordingly, these allegations do not state any viable claim under the FCRA.

In Paragraphs 2 and 3 quoted above, Rajapakse also appears to be invoking § 1681s-2(b), which does provide a private legal cause of action. *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012). A claim under § 1681s-2(b) claim requires a plaintiff to allege and prove: 1) that the duties under § 1681s-2(b) were triggered by the defendants' receipt of notice from a consumer reporting agency that the information at issue was being disputed by the plaintiff; and 2) that the defendant did not comply with its statutorily required duty to investigate the dispute. *Baker v. JP Morgan Chase Bank*, 2017 WL 395092, at *4 (M.D. Tenn. Jan. 30, 2017), report and recommendation adopted sub nom. *Baker v. JP Morgan Chase Bank*, 2017 WL 841141 (M.D. Tenn. Mar. 2, 2017) (citing *Downs v. Clayton Homes, Inc.*, 88 Fed. Appx. 851, 853-54 (6th Cir. Feb. 9, 2004); *Burgess*, 2010 WL 1752028 at *2). Importantly, "the duty of a furnisher of credit

information to investigate a credit dispute under Section 1681s-2(b) is triggered only after the furnisher receives notice of the dispute from a consumer reporting agency.  Notification from a consumer is insufficient." *Baker*, at *4 (quoting *Westbrooks v. Fifth Third Bank*, 2005 WL 3240614, *4 (M.D. Tenn. Nov. 30, 2005)).

Viewing Rajapakse's complaint in the light most favorable to her, she has arguably alleged in her complaint that she disputed a debt with a credit reporting agency and the agency, in turn, provided CAC notice of such a dispute, thereby triggering the duty to investigate by defendants as a furnisher.  However, Rajapakse has not alleged that defendants failed to conduct such an investigation or comply with any other statutory duty.  Indeed, it is not clear from the allegations in the amended complaint how defendants are alleged to have violated the FCRA. *See Moore v. Capital One Serv., LLC*, 2013 WL 1136725, at *3 (W.D. Mich. Feb. 26, 2013) (report and recommendation adopted in 2013 WL 1129608) ("to state a claim, plaintiff must allege that he complained to a credit reporting agency, that the credit reporting agency notified defendant of the dispute, and that the defendant failed to conduct a reasonable investigation or other specific duty established by the FCRA").  Rather, Rajapakse's allegations in Paragraph 3 recite the elements of a claim under § 1681s-2(b) without any factual support delineating which statutory duty(ies) defendants violated. *See Strohmeyer v. Chase Bank* USA, 2018 WL

2669991 (E.D. Tenn. June 4, 2018) (Conclusory allegations of a dispute debt are

insufficient to state a claim); *Anderson v. Northstar Mortgage LLC*, 2018 WL

3328059, *4 (M.D. Tenn. July 6, 2018) (The plaintiff failed to state an FCRA

claim where he did not allege any facts suggesting the defendant failed to

"investigate such a dispute, review information provided by a CRA, report the

results of its investigation, or take action based on the results of any investigation,

or that it otherwise violated its obligations under § 1681s-2(b).").  Moreover,

Rajapakse's allegations suggest that the credit reporting agencies removed the debt

from her credit reports after she disputed the debt.  (*See* Dkt. 40, Pg ID 299)

("After Rajapakse disputed her report twice in August 2017 and February 2017 in

which all three credit bureaus removed Credit Acceptance Corporation off her

credit as outline in the Fair Credit Reporting Act.").  This allegation would seem to

contradict any claim that defendants violated their duties under § 1681s-2(b).

Because the amended complaint contains insufficient factual allegations to support

a claim under § 1681s-2(b) and because allegations in the complaint contradict her

claim that defendants violated the FCRA, Rajapakse has failed to state a claim on

which relief may be granted under § 1681s-2(b).

> 6.    Fraud

Finally, Rajapakse's fraud claim also fails because she has not pleaded it

with any particularity as required by Federal Rule of Civil Procedure 9(b).  This

case is similar to the circumstances presented in *Freund v. Deutsche Bank Nat'l Tr. Co.*, 2014 WL 12658843, at *3 (E.D. Mich. Oct. 22, 2014), where the plaintiff mentioned the word "fraud" only once in his complaint.  The court concluded that, even construing the complaint liberally to assert a claim of fraud, the plaintiff failed to meet the heightened pleading requirements of Rule 9(b), which require plaintiffs to plead the "who, what, when, where, why and how of the alleged fraud."  *Id*.  Here, Rajapakse's only allegation regarding her fraud claim in her amended complaint is as follows:

> Credit Acceptance Corporation breach of warranty presented a common law of fraud due to the existent or preexisting fact the warranty purchased CAC nor dealers or affiliates had no intentions of honoring such service, knowing made the impression or false claim of the warranty, the representation of the warranty was intended for Rajapakse to rely on the warranty, Rajapakse has reasonably to rely on it, and a result she was injured by its breach.

(Dkt. 40, p. 6).  Rajapakse provides, at most, a portion of the "what," but no specific details regarding the "who," "when," "where" and "why" to support her fraud claim and has not met the pleading requirements of Rule 9(b).  Thus, her fraud claim fails on the merits.

## V.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED**, and that Rajapakse's remaining motions be **TERMINATED** as moot.[4]

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

---

[4] On January 27, 2019, plaintiff filed a document entitled "To the Honorable District Court of the Eastern District," in which, amongst other things, plaintiff advises the Court of information relating to the recent return of some of her property.  (Dkt. 135).  The filing is not a motion and does not request any relief.  Therefore, the undersigned makes no recommendation concerning the same, but rather by this footnote simply acknowledges its content and the sentiment conveyed therein.

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local

Rule 72.1(d).  The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc.  If the Court determines that any objections are

without merit, it may rule without awaiting the response.

Date:  January 30, 2019                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 30, 2019, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel and/or parties of record.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov